# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA E. FORRY,          :     **Civil No. 1:18-CV-00082**
                               :
           **Plaintiff,**     :
                               :
    **v.**                      :
                               :     **(Magistrate Judge Carlson)**
**NANCY A. BERRYHILL**[1]     :
**Deputy Commissioner**         :
**for Operations of Social**       :
**Security**                   :
             **Defendant.**     :

## MEMORANDUM OPINION

### I.    Introduction and Litigation History

Sandra E. Forry ("Forry") presents a claim for disability which is largely premised upon limitations caused by severe lower back pain. In the instant case we are called upon to review the sufficiency of the Administrative Law Judge's ("ALJ") evaluation of Forry's claim under the Social Security listings which describe those cases where claimants are deemed disabled, *per se*; his evaluation of the medical opinions; and his consideration of the side effects Forry alleges she

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security. Due to the Federal Vacancies Reform Act, Former Commissioner of Social Security, Nancy A. Berryhill, is currently presiding as the Deputy Commissioner for Operations of the Social Security Administration, performing duties and functions not reserved to the Commissioner of Social Security.

suffers from her medications.  On January 30, 2014, Ms. Forry protectively filed claims under Titles II and XVI of the Social Security Act for disability, disability insurance benefits, and supplemental security income. (Tr. 18.) In both applications, she alleged the onset date of disability as September 1, 2011. (Id.) Her claims were initially denied on September 30, 2014, and subsequently, she filed a written request for an administrative law hearing on December 2, 2014. (Id.) Represented by counsel, Forry appeared and testified at a hearing held on October 25, 2016. (Id.) On November 15, 2016, the ALJ issued a written decision finding that Forry was not disabled within the meaning of the Social Security Act. (Id. at 30.) In turn, Forry filed a request for review with the Appeals Council, which was denied on November 7, 2017. (Id. at 1.) Following this rejection, Forry filed the instant appeal with the District Court on January 1, 2018. (Doc. 1.)

Both parties have fully briefed this case, and it is ripe for resolution. For the reasons set forth below, we conclude that the ALJ's findings are supported by substantial evidence, and therefore, this decision will be affirmed.

## II.    <u>Factual Background</u>

Ms. Forry is a 47 year old woman who has an associate's degree in business management (Tr. 904), and has previously worked as a wire harness assembler and driver dispatcher. (Id. at 28.) When Forry applied for disability benefits, she listed pars defect, a spinal condition,  as a severe condition that limited her ability to

work. (Id. at 172.) On May 29, 2013, Forry saw her treating primary care physician, Dr. Raymond J. Kraynak ("Dr. Kraynak") for issues related to ongoing lower back pain. (Id. at 904.) Forry reported that the lower back pain was severe and rated it between a six and a seven on a scale of one to ten for pain intensity. (Id.) At this appointment, Dr. Kraynak noted that Forry walked "with a wide, stiff gait;" (Id.), she had difficulty walking on her heels and toes; her straight leg test was negative; and she had a lot of muscle spasm. (Id. at 905.) Dr. Kraynak further noted at this appointment that Forry had pars defect and a history of chronic lumbar pain that was secondary to degenerative arthritis. (Id.)

Forry treated with Dr. Kraynak until at least October 17, 2016. At every appointment documented in the record after her May 29, 2013 appointment, Dr. Kraynak noted that Forry was able to function better with her medications; the medications improved her quality of life and caused no adverse side effects; and she gets pain relief, or analgesia, with her medication. (Id. at 673-728, 906-943.) Additionally, on January 20, 2014, Ms. Forry reported that her then current medications caused her to feel drowsy, (Id. at 727), however, Dr. Kraynak continued to note after that appointment that Forry did not experience any adverse side effects from her medications. The doctor consistently made this same kind of somewhat contradictory report concerning the effects of Forry's medications at every subsequent appointment in the record, stating that she both experienced no

adverse side effects but felt fatigue as a result of her medication. (Id. at 673-726, 920-943.) On October 21, 2015, Dr. Kraynak started to regularly opine in his treatment notes that even though Ms. Forry's quality of life and functionality was improved with medication, she has severe debilitation and she is unable to work because "[s]he is profoundly disabled." (Id. at 673, 674.) On May 6, 2014, Dr. Kraynak opined in a letter to the Pennsylvania Department of Labor and Industry's Bureau of Disability Determination that Forry cannot climb, bend, stoop, or crawl because of her back pain, and "[s]he is totally disabled from any employment." (Id. at 495.)

In addition to these treatment notes, the medical record disclosed that on November 20, 2013, Forry had an MRI of her lumbar spine which revealed that she had multilevel degenerative changes with severe canal narrowing at L4-5; a "[q]uestion of stable right pars defects with stable minimal anterolisthesis of L5 on S1;" stable, benign hemangiomas in her vertebral bodies; and large gallstones. (Tr. 236-237.) Subsequently, Forry had her gallbladder removed on February 20, 2014. (Id. at 322.)

On September 25, 2014, Forry attended a consultative examination, arranged by the Pennsylvania Bureau of Disability Determination, with Dr. Justine Magurno ("Dr. Magurno"). (Id. at 499.) At this exam, Forry reported to Dr. Magurno that with medication, her back pain can range between a one out of ten and a nine out

of ten on the pain scale, and that she has previously declined surgery that would have helped with her back condition. (Id.) Dr. Magurno also noted that Forry smoked half a pack of cigarettes a day and that her activities of daily living included cooking, cleaning, doing laundry, shopping, child care, showering, watching TV, and attending her son's football games. (Id. at 500.) As a result of this exam, Dr. Magurno diagnosed Ms. Forry with lower back pain due to pars defect, iron deficiency, low vitamin D, diarrhea (status post cholecystectomy), history of depression and anxiety, tobacco abuse, and obesity. (Id. at 502.) On that same day, Dr. Magurno filled out a Medical Source Statement concerning Forry's ability to do physical, work-related activities. (Id. at 503-508.) In that Medical Source Statement, Dr. Magurno found that Ms. Forry could occasionally lift/carry up to 20 pounds; could sit for six of the eight hours in a workday; could stand and walk for two of the eight hours in a workday; did not require a cane to ambulate; could continuously use her hands for various activities; could occasionally climb stairs and ramps, stoop, crouch, and crawl; could frequently kneel; and could never balance and never climb ladders or scaffolds. (Id. at 503-506.) The ALJ gave great weight to these findings from Dr. Magurno because he found that they were "consistent with the improvement in [Forry's] condition following her prescribed course of treatment. Moreover, [Dr. Magurno's] opinion is also consistent with

[Forry's] ability to independently care for her personal needs, and perform household chores." (Id. at 28.)

On May 4, 2015, Ms. Forry underwent another MRI of her lumbar spine, at the request of Dr. Kraynak. (Id. at 671.) This study revealed disc dessication with mild disc space narrowing that is consistent with degenerative disc disease; no clumping of the cauda equina that would suggest arachnoiditis; broad-based posterior disc herniation that minimally indents the thecal sac; no significant foraminal narrowing at T12-L1, L1-L2, and L2-L3; no significant spinal canal stenosis at L2-L3; mild spinal canal stenosis and bilateral neural foraminal narrowing at L3-L4; mild bilateral neural foraminal narrowing at L4-L5; pseudo disc bulge related to grade one anterolisthesis of L5 on S1; and severe bilateral neural foraminal narrowing of L5-S1. (Id. at 671.)

Because of her pain and her then most recent MRI, Dr. Kraynak referred Ms. Forry to neurosurgeon Dr. Sarkar Atom ("Dr. Atom") to evaluate Forry for surgical intervention to help alleviate her back pain due to pars defect. (Id. at 619.) As a result of this consultation, Dr. Atom concluded that before considering surgery, Ms. Forry should make an effort to stop smoking, lose weight, do pain management, and attend physical therapy to address her issues. (Id.) Consequently, on December 21, 2015, Forry started pain management with Dr. Kevin Wong ("Dr. Wong") for her lower back pain. (Id. at 784.) As part of her pain management

appointment, Forry was examined by Dr. Brian Monroe ("Dr. Monroe"), who recommended scheduling facet joint injections at L5-S1. (Id. at 788.)

On January 28, 2016, and May 6, 2016, Dr. Monroe administered facet injections for Ms. Forry at her L4-5 and L5-S1. (Id. at 804, 843.) At the follow-up appointment for her May 2016 injections on September 2, 2016, Forry reported that she experienced 100 percent relief of her lower back pain with her last injections, but she still had pain in her legs that she rated as a two out of ten on the pain scale. On September 26, 2016, Dr. Monroe administered a caudal epidural steroid injection to Ms. Forry. (Id. at 877.)

On October 17, 2016, Dr. Kraynak completed a Medical Source Statement concerning Ms. Forry's physical capabilities in the workplace. (Tr. 730-735.) In this medical source statement, Dr. Kraynak opined that Forry could occasionally lift/carry up to ten pounds; could sit for two of the eight ours in a workday; could stand and walk for one of the eight hours in the workday; did not need a cane to ambulate; was capable of limited activities which use her hands; could never balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, or scaffolds; and she required a quiet library-like work environment. (Id. at 730-734.)

The various opinions of Dr. Kraynak noted throughout the record were allotted little weight by the ALJ in his decision. (Id. at 27.) The ALJ explains that

these opinions were afforded little weight because they are "inherently inconsistent with [Dr. Kraynak's] physical examination findings, showing that [Forry's] straight leg test was negative, and her neurologic system was normal. [Dr. Kraynak's] opinion is also inconsistent with his findings that [Forry] had increased functionality and better life quality due to her medication use." (Id.)

With regard to Ms. Forry's mental health, we did not find any evidence in the case record indicating that Ms. Forry had treated with a mental health specialist for her anxiety and depression. At her evaluation with the state agency psychological consultant Dr. Erin Urbanowicz ("Dr. Urbanowicz"), Dr. Urbanowicz found that Forry had only mild mental health limitations; Forry was not alleging any mental health impairment; and therefore, Forry's mental health impairment was non-severe. (Id. at 92.) The ALJ gave Dr. Urbanowicz's opinion significant weight because it is consistent with the record, which demonstrated that Ms. Forry's "mental impairments did not require formal or specialized mental health treatment." (Id. at 23.)

In light of the evidence presented by Ms. Forry, the ALJ issued a decision on November 15, 2016, denying this disability claim. (Tr. 15-30.) In this decision the ALJ concluded at Step 2 of the sequential analysis which applies to Social Security disability cases that Forry was severely impaired by her degenerative disc disease. (Id. at 20.) The ALJ also noted that Forry has nonsevere impairments consisting of

migraine headaches, stomach pain residuals from gallbladder surgery, obesity, depression, anxiety, and seizure disorder. (Id. at 21.) The ALJ found, however, that Forry's back impairments did not meet the requirements of a Social Security listing. (Tr. 24.) In consideration of the entire record, the ALJ found that Forry had the residual functional capacity to do sedentary work, except that she could: lift, carry, push, and/or pull up to ten pounds occasionally, and two to three pounds frequently; sit for six of the eight hours in a workday; can stand and/or walk for two of the eight hours in a workday; sit for one hour at time before she needs to get up; and be on her feet for only 30 minutes until she needs to sit down. (Id. at 24.) The ALJ further found that Forry was also unable to climb ladders, ropes, or scaffolds; and must avoid exposure to unprotected, dangerous heights, unprotected, dangerous machinery, excessive vibrations, extreme temperatures, and humidity. (Id.) On the other hand, the ALJ also found that Forry could continuously reach in front, laterally, and overhead, handle, finger, and feel; understand, remember, carry out simple instructions, and make simple work-related decisions; and respond appropriately to co-workers, supervisors, the public, usual work situations and changes in a simple, routine, and repetitive job. (Id. at 24.)

Having reached this conclusion regarding Forry's functional capacity, the ALJ determined that she could perform jobs which existed in significant numbers

in the regional and national economy. (Tr. 29.) The ALJ, therefore, concluded that Forry was not disabled, and denied her disability claim. (tr. 30.)

This appeal followed. On appeal, Forry asserts three objections to the ALJ's decision as follows: (1) the ALJ erred in finding that Forry does not meet a listing which would prescribe her as *per se* disabled; (2) the ALJ did not provide adequate rationale in rejecting the treating and examining source opinions; and (3) the ALJ erred because he failed to consider the type, dosage, effectiveness, and side effects of Forry's medications and her treatments other than medication in evaluating Forry's alleged symptoms. (Doc. 9 p. 3.) For the reasons set forth below, we find that the ALJ's decision denying Ms. Forry benefits is supported by substantial evidence, and therefore, the decision is affirmed.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of the Administrative Law Judge and the Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec.,

220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); <u>see also</u> 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller v. Acting Comm'r of Soc. Sec.</u>, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of

disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions an RFC determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RF C is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B.     Judicial Review of ALJ Determinations – Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial

evidence in the record. <u>See</u> 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the

relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the court of appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### C.    Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2); 416.927(a)(2) (effective Aug. 24, 2012, through Mar. 26,

2017).[2] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §§404.1527(c); 416.927(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to more weight. See 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (effective June 13, 2011, through Mar. 26, 2017) (defining "treating source"). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically

[2] Some of the applicable regulations been revised since the ALJ issued her decision in this case. For instance, definition of "medical opinions," contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now designated as § (a)(1) in the revised regulation. Throughout this opinion, the court cites to the version of the regulations in effect at the time the ALJ rendered her decision. Although the revised regulations may be worded slightly differently, the changes have no effect on the outcome of this case.

acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§404.1527(c); 416.927(c).

At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. At the ALJ and Appeals Council levels of the administrative review process, however, findings by nonexamining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. §§404.1527(e); 416.927(e). (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert

opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record."   SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources.  Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not

treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429)). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

> In making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); <u>Turner v. Colvin</u>, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

**D.** **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR

16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has

received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### E.    The ALJ Did Not Err in His Step Three Determination

At the outset, Forry states that she disagrees with the ALJ's finding that she is capable of sedentary work (Doc. 9 p. 4), and asserts that the ALJ erred by finding that Forry does not meet a listing which would have defined her as *per se* disabled.. (Id. at 2.) Forry argues that with her limitations, she is unable to perform any sedentary work at all. (Id. at 5.) The Deputy Commissioner counters that Forry does not meet a listing, specifically listing 1.04A, "because she has not presented evidence of motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, or positive straight leg testing in both the sitting and supine position." (Doc. 10 p. 16-17.)

At the outset, we note that it is a high bar that Forry must overcome in advancing her Step Three claim. Step Three arguments by Social Security

claimants must meet exacting legal standards. At Step Three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the Social Security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. §404.1520(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §404.1520(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Here, the issue is whether Forry qualifies as *per se* disabled under Listing 1.04, which concerns spinal disorders that result in the "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P, app. 1, §1.04. To meet listing 1.04, a claimant must demonstrate that in addition to a compromised nerve root or spinal cord, there is:

A. [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine);

       or

B. [s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning of painful dysesthesia, resulting in the need for changes in position more than once every [two] hours;

       or

C. [l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, §1.04. In this case, the ALJ concluded that the medical evidence failed to establish that Forry's physical condition met the requirements of listing 1.04. (Tr. 24.)

Cognizant of the fact that Forry bears the burden of proving that she meets all of the 1.04 criteria, we find that substantial evidence supports the ALJ's conclusion that Forry did not satisfy this precise and multi-faceted burden of proof. In arguing that she meets a listing, Forry refers to MRI results which show Forry suffers from broad-based central herniations, small focal central herniations, moderate central stenosis, central annular tears, and foraminal stenosis; a medical opinion stating that an L5-S1 stabilization could be considered after less invasive

treatments; and her own testimony on her inability to perform various tasks; however, she fails to explain how this evidence specifically shows that she meets the 1.04 criteria. (Doc. 9 p. 4.) In contrast, the ALJ addresses the matter by stating that there was no evidence presented in the record demonstrating any of the 1.04 criteria. (Tr. 24.) Moreover, the medical record is devoid of evidence which would meet the listing requirements such as a proven inability to ambulate effectively, profound nerve root compression and impairment, or severe pain which compels frequent movements. Instead, substantial evidence existed which indicated that Forry's condition did not meet all of the listing criteria. For example, Dr. Kraynak observed that there was no clumping of the cauda equina to suggest Forry suffers from arachnoiditis (Id. at 671); and opined that Forry did not need a cane to ambulate. (Id. at 731.) Additionally, Forry reported daily activities such as cooking, cleaning, doing laundry, shopping, child care, showering and attending her son's football games; (Id. at 500), and testified that she has never used an assistive device to ambulate. (Id. at 45-46.) Because Forry does not point to evidence clearly demonstrating that she meets the requirements of 1.04, and because she does not explain how the evidence presented equates to meet the 1.04 criteria, we find that the ALJ did not err in finding that Forry does not meet a listing, and therefore, Forry's argument fails.

**F.     The ALJ's Assignment of Weight to Dr. Kraynak's Opinion Is Supported by Substantial Evidence.**

Next, Forry asserts that the ALJ provided inadequate rationale for the weight assigned to the treating and examining source medical opinions and failed to properly consider such opinions under the regulations. (Doc. 9 p. 2.) After making this general argument, Forry does not otherwise indicate where the ALJ's analysis of this evidence erred. In response, the Deputy Commissioner contends that the ALJ did not err in applying the regulations, and that the ALJ's decision is supported by substantial evidence. (Doc. 10 p. 18.)

Specifically, the Deputy Commissioner argues that substantial evidence supports the ALJ's decision to afford little weight to treating physician Dr. Kraynak's opinions, which commented on Forry's various physical limitations caused by her lumbar disc disease and spinal stenosis. (Id.) As we observed earlier, so long as the ALJ's decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight. Here, the ALJ explained that he assigned little weight to Dr. Kraynak's opinions because they are "inherently inconsistent with his physical examination findings, showing [Forry's] straight leg test was negative, and her neurologic system was normal. [Dr. Kraynak's] opinion is also inconsistent with his findings that [Forry] had increased functionality and better life quality due to her medication use." (Tr. 27) (citations omitted).

We find that this is a sufficient explanation for rejecting Dr. Kraynak's opinions because the medical evidence to which the ALJ cited could cause a reasonable mind to doubt the reliability of Dr. Kraynak's statements. The record contains numerous, and contradictory, treatment notes from Dr. Kraynak which consistently noting that Ms. Forry's medications increased her functionality and quality of life, yet asserted that she was still "profoundly disabled." (See Tr. 904-943.) The record also shows that Dr. Kraynak consistently reported Forry's straight leg raising test as negative (tr. 904-943); that Dr. Kraynak observed that there is no clumping of the cauda equina to suggest Forry suffers from arachnoiditis (Id. at 671); and that Dr. Kraynak opined Forry does not need a cane to ambulate. (Id. at 731.) Additionally, Forry reported that she experienced 90 percent relief from her lower back pain and 100 percent relief from her lower back pain after having bilateral lumbar facet block injections on January 28, 2016 (Id. at 804), and May 6, 2016; (Id. at 867); she reported daily activities such as cooking, cleaning, doing laundry, shopping, child care, showering and attending her son's football games; (Id. at 500), and at the administrative law hearing, she testified that she has never used an assistive device to ambulate. (Id. at 45-46.) In light of this evidence of record, we find that there is substantial evidence that supported the ALJ's decision regarding the limited weight to be given to this medical opinion, and therefore, the ALJ did not err in his assignment of limited weight to Dr. Kraynak's opinions.

### G. The ALJ's Evaluation of Ms. Forry's Alleged Symptoms is Supported by Substantial Evidence.

Finally, Forry asserts in a summary manner that the ALJ erred because he did not consider the type, dosage, effectiveness, and side effects of the medications Forry was taking, and he did not consider treatments that she receives other than medications. (Doc. 9 p. 3.) While the precise nature of this argument is not entirely clear, we understand Forry to be alleging that the ALJ failed to adequately address her reported symptoms which she attributed to this medication. Therefore, we shall address this issue in the context of the regulations concerning the evaluation of a claimant's alleged symptoms, which are the regulations we find most appropriate here.

As enumerated earlier, there are a number of relevant factors that should be considered in the evaluation of a claimant's alleged symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Included in this list of factors are the "type, dosage, effectiveness, and side effects" of a claimant's medications and the treatments used in addition to medication. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). We note that the Third Circuit has also held that an ALJ is not obligated to credit a claimant's statements about his or her symptoms; rather, the ALJ is only obligated to carefully consider such statements. Chandler, 667 F.3d at 363. This consideration of such statements is made in the context of the entire record. SSR 16-3p, 2016 WL 1119029 at *4. Ultimately, the claimant's "allegations of pain and

other subjective symptoms must be supported by objective medical evidence." Hantraft, 181 F.3d at 363.

With regard to Ms. Forry's medications, Dr. Kraynak's treatment notes documented various observations concerning their effect on Ms. Forry. Dr. Kraynak has consistently noted that Forry's quality of life and functionality were better because of her medications. (Tr. 673-728, 904-943.) Dr. Kraynak has also observed that Forry experienced analgesia and drowsiness when taking her medications but maintained that Forry never complained of any "adverse effect or side effects" due to her medication. (Id. at 727.) In fact, this juxtaposition consistently appears numerous times in Dr. Kraynak's treatment notes on Ms. Forry's status concerning her medications. (See tr. 673, 675, 679, 681, 683, 685, 687, 689, 691, 693, 695, 697, 699, 701, 703, 705, 707, 709, 711, 713, 715, 717, 719, 721, 723, 725, 920, 922, 924, 926, 928, 930, 932, 934, 936, 938, 940, 942.)

Thus, the evidence regarding the effects of this medication is mixed, equivocal and occasionally contradictory. Furthermore, Forry does not point to any evidence of her alleged side effects other than her testimony at her administrative hearing. (Doc. 9 p. 6.) Upon close inspection of the record, we find that this testimony is actually inconsistent with the treatment notes from Dr. Kraynak, in that, Ms. Forry alleged that diarrhea was one of the side effects of her medication, yet in the record, Dr. Kraynak noted that she previously had "a history of

[g]astrointestinal issues, including chronic diarrhea and abdominal cramping," which he did not attribute to her medications. (Tr. 673-727.) In fact, in the notes from Forry's consultative examination with Dr. Magurno, it is noted that Forry has had stomach problems and diarrhea after meals ever since the removal of her gallbladder in February 2014. (Id. at 499.) Given this equivocal medical evidence, much of which suggested that Forry's medications significantly improved her overall condition, without further explanation of how the side effects of her medication should have been considered by the ALJ, we find Ms. Forry's argument fails. Substantial evidence supported the ALJ's symptom evaluation in this case and Forry does not explain how the side effects she alleged at her hearing impaired her to an extent to which she is disabled. Therefore, we find that the ALJ did not err in his evaluation of Ms. Forry's symptoms.

In sum, we find that the ALJ did not err in his decision finding that Forry is not disabled within the meaning of the Social Security Act. Forry fails to present evidence demonstrating that she meets the criteria of a listing; the ALJ provided adequate explanation for why he gave Dr. Kraynak's opinion little weight; and Forry does not explain how the side effects of her medications impair her to the point of disability. Thus, notwithstanding Forry's argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling

once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this case. For these reasons, we affirm this decision and direct that judgment be entered in favor of the Deputy Commissioner and against Forry.

An appropriate order follows.

Submitted this 23rd day of July, 2018.


_s/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge